747 N.W.2d 629 (2008)
275 Neb. 562
Glenn POPPERT, Appellant
v.
Bill D. DICKE et al., Appellees.
No. S-06-741.
Supreme Court of Nebraska.
April 24, 2008.
*631 R.J. Shortridge, Corey L. Stull, Jeanette Stull, Shawn P. Dontigney, and Derek A. Aldridge, Lincoln, for appellant.
John C. Chatelain, Omaha and John J. Maynard, of Chatelain & Maynard, for appellees Bill D. Dicke and Cattlemen's Nutrition Services, L.L.C.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
Glenn Poppert filed this action against Bill D. Dicke; Cattlemen's Nutrition Services, LLC (CNS); McDermott and Miller, P.C. (McDermott & Miller); and Donald A. Schaller. Poppert appeals from the district court's dismissal of his claims for breach of the fiduciary duties of loyalty, care, and good faith and fair dealing.

FACTUAL BACKGROUND
Poppert and Dicke organized Cattlemen's Consulting Service, Inc. (CCS). Poppert was a 10-percent equity owner; Dicke was a 90-percent equity owner. Before entering into the business, Poppert sought and received the professional opinion of McDermott & Miller, an accounting firm, and Schaller, a certified public accountant. CCS dissolved in 2000, and Poppert resigned in 2003. Dicke formed CNS in 2004.
In his amended complaint, Poppert alleged 10 discrete "causes of action." The first three "causes of action" claimed a breach of the duties of loyalty, care, and good faith and fair dealing. With respect to each duty, Poppert alleged that Dicke breached it by paying himself and others an excessive salary, failing to distribute earnings after October 13, 2003, *632 selling CCS' assets piecemeal to himself rather than preserving its goodwill by selling as an ongoing business, and operating a competing business at the same time as he was a member of CCS.
In his fourth "cause of action," misappropriation of company opportunities, Poppert alleged that Dicke purchased CCS assets piecemeal, acquiring goodwill and trade secrets for insufficient consideration. Poppert's fifth and sixth "causes of action" alleged that Dicke negligently and fraudulently misrepresented the value of CCS.
Poppert's seventh "cause of action," unjust enrichment, alleged that Dicke paid himself an excessive salary, failed to distribute earnings, and dissolved CCS for less than fair market value, thus acquiring goodwill and trade secrets for less than fair market value. In his eighth and ninth "causes of action," Poppert alleged professional negligence and negligent misrepresentation on the part of Schaller and McDermott & Miller, contending that these defendants misrepresented the value of CCS. Poppert's tenth "cause of action" alleged the misappropriation of trade secrets involving CCS' secrets' being given to CNS without proper consideration.
Dicke and CNS filed a motion to dismiss, which was granted in part. In particular, the district court concluded that as to the first three "causes of action"  breach of the duties of loyalty, care, and good faith and fair dealing  no such duties existed. The district court reasoned that under Nebraska's Limited Liability Company Act, Neb.Rev.Stat. § 21-2601 et seq. (Reissue 1997), there was no express fiduciary duty relating to the conduct of members and managers of a limited liability company. The district court certified its dismissal under Neb.Rev.Stat. § 25-1315(1) (Cum. Supp. 2006), and Poppert appeals.

ASSIGNMENT OF ERROR
Poppert assigns, restated, that the district court erred in finding that there was no fiduciary duty imposed upon members and managers in a limited liability company.

STANDARD OF REVIEW
A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[1]

ANALYSIS
Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[2] The procedural posture of this case presents an issue under § 25-1315(1).
Section 25-1315(1) provides that
[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or *633 other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
Section 25-1315(1), therefore, is limited to circumstances "[w]hen more than one claim for relief is presented" and the court's order finally adjudicates "one or more but fewer than all of the claims." Before § 25-1315 was enacted, the dismissal of one of multiple causes of action was a final, appealable order, but an order dismissing one of multiple theories of recovery, all of which arose from the same set of operative facts, was not a final order for appellate purposes.[3] Section 25-1315 was an attempt by the Legislature to clarify questions regarding final orders where there were multiple claims, but it permits a judgment to become final only under the limited circumstances set forth in the statute.[4] It does not provide "magic words," the invocation of which transforms any order into a final judgment for purposes of appeal.[5]
A "claim for relief" within the meaning of § 25-1315(1) is equivalent to a separate cause of action, as opposed to a separate theory of recovery.[6] And a final judgment is the functional equivalent of a final order within the meaning of Neb.Rev. Stat. § 25-1902 (Reissue 1995).[7] Thus, for an order appealed from to be certifiable as a final judgment under § 25-1315(1), (1) the case must involve multiple causes of action, as opposed to theories of recovery, and (2) the order must completely dispose of at least one of those causes of action.
A cause of action consists of the fact or facts which give one a right to judicial relief against another; a theory of recovery is not itself a cause of action.[8] Thus, two or more claims in a complaint arising out of the same operative facts and involving the same parties constitute separate legal theories, of either liability or damages, and not separate causes of action.[9] Whether more than one cause of action is stated depends mainly upon (1) whether more than one primary right or subject of controversy is presented, (2) whether recovery on one ground would bar recovery on the other, (3) whether the same evidence would support the different counts, and (4) whether separate causes of action could be maintained for separate relief.[10]
Poppert's operative complaint in this case purports to allege 10 discrete "causes of action." Further review of the complaint, however, suggests that there are at most only three causes of action. Poppert's "causes of action" Nos. 1 through 3, which were dismissed by the order from which Poppert now appeals, are instead part of the same cause of action, as the allegations supporting each are effectively identical and more appropriately labeled "theories of recovery." With respect to these theories of recovery, Poppert alleges that Dicke breached the *634 fiduciary duties of loyalty, care, and good faith and fair dealing by paying himself and others an excessive salary, failing to distribute earnings, selling CCS' assets piecemeal to himself rather than preserving its goodwill by selling as an ongoing business, and operating a competing business at the same time as he was a CCS member.
"Causes of action" Nos. 8 and 9, directed at defendants Schaller and McDermott & Miller, are also just different theories of recovery for the same single cause of action and therefore compose Poppert's second cause of action. Poppert alleges in these theories of recovery that Schaller and McDermott & Miller engaged in professional malpractice and negligent misrepresentation when each defendant allegedly overrepresented the value of CCS at formation. And arguably, "causes of action" Nos. 5 and 6, while directed at Dicke, are coextensive with "causes of action" Nos. 8 and 9, as all four allege that Poppert was deceived about the capitalization and value of CCS.
But most importantly, "causes of action" Nos. 1 through 3 are coextensive with "causes of action" Nos. 4, 7, and 10. The same operative facts support all six of these theories of recovery: Dicke allegedly paid excessive salaries, did not pay Poppert cash distributions, and sold the business to himself piecemeal so as to acquire its goodwill and trade secrets without paying fair market value. "Causes of action" Nos. 1 through 4, 7, and 10 are, in fact, all theories of recovery for the same underlying cause of action. And the district court's order dismisses some of those theories of recovery, i.e., "causes of action" Nos. 1 through 3, but does not dismiss all of them.
In short, the district court's order was not a "`final order' ... as to one or more but fewer than all of the causes of action."[11] To be appealable, an order must satisfy the final order requirements of §§ 25-1902 and 25-1315(l).[12] "`[S]ince the judgment does not dispose of the entirety of any one claim [for relief], it cannot be made an appealable judgment by recourse'" to § 25-1315(1).[13] And without a final order, this court lacks jurisdiction and must dismiss the appeal.[14]
We conclude this court lacks jurisdiction over this appeal, and it must be dismissed.

CONCLUSION
The trial court did not have the authority to certify the order appealed from as a final judgment, as that order disposes of three theories of recovery for a particular cause of action, but does not dispose of three other theories of recovery for the same cause of action. This appeal is dismissed.
APPEAL DISMISSED.
STEPHAN, J., not participating.
GERRARD, J., concurring.
I agree completely with the court's analysis of the jurisdictional issue presented in this appeal, and I join the court's opinion. I write separately to comment on these proceedings, in the hope of limiting similar jurisdictional defects in future cases.
The parties have represented, and the record suggests, that the district court certified this appeal as a final judgment on its *635 own motion. Despite the fact that a party aggrieved by a certified final judgment may be required to perfect a timely appeal from that judgment to preserve a claim of error,[1] sua sponte certification of a final judgment is generally considered to be within a trial court's discretion.[2]
This discretion, however, should be exercised sparingly by trial courts. The purpose of Neb.Rev.Stat. § 25-1315(1) (Cum. Supp. 2006) is to make interlocutory review available in the """infrequent harsh case""" in which the general policy against piecemeal appeals is outweighed by the likelihood of injustice or hardship to the parties of a delay in entering a final judgment as to part of the case.[3] It will be an "`unusual case'" in which certification of a final judgment should be entered at all.[4] It should be an even more unusual case in which a court should certify a final judgment without a party's request.
Because certification is primarily intended to serve the needs of the parties, it would be preferable for a trial court to seek the input of the parties before proceeding to certify a judgment, because factors unknown to the court may affect the equities of certification. It may be that hardship to the parties will be exacerbated, and not relieved, by an interlocutory appeal. In this case, for example, the certification order has required the parties to expend time and "to incur costs and significant attorneys' fees appealing and briefing the certified issues."[5] It is also possible that the jurisdictional defect presented in this appeal might have been called to the attention of the trial court, and avoided, had the parties been invited to participate in determining whether or not a final judgment should be certified.
I note, for the benefit of future litigants, that because a certified judgment is considered final for all purposes, a party can ask a trial court to reconsider a decision to certify a final judgment, with a timely motion to alter or amend the certified judgment.[6] This presents parties with a way to present jurisdictional or prudential concerns to the trial court, even after a final judgment has been certified.
Nonetheless, the pitfall of defective appellate jurisdiction was not avoided in this case. While it is unfortunate, the terms of § 25-1315(1) simply do not permit us to exercise jurisdiction in this case. Therefore, I join the opinion of the court dismissing this appeal.
NOTES
[1] Williams v. Baird, 273 Neb. 977, 735 N.W.2d 383 (2007).
[2] Goodman v. City of Omaha, 274 Neb. 539, 742 N.W.2d 26 (2007).
[3] Cerny v. Todco Barricade Co., 273 Neb. 800, 733 N.W.2d 877 (2007); Malolepszy v. State, 270 Neb. 100, 699 N.W.2d 387 (2005); Keef v. State, 262 Neb. 622, 634 N.W.2d 751 (2001).
[4] See, Cerny, supra note 3; Malolepszy, supra note 3; Keef, supra note 3.
[5] Keef, supra note 3.
[6] See, Keef, supra note 3; Chief Indus. v. Great Northern Ins. Co., 259 Neb. 771, 612 N.W.2d 225 (2000).
[7] See Cerny, supra note 3.
[8] Keef, supra note 3.
[9] See id.
[10] Id.
[11] Bailey v. Lund-Ross Constructors Co., 265 Neb. 539, 547, 657 N.W.2d 916, 924 (2003).
[12] See Cerny, supra note 3.
[13] See Monument Mgt. Ltd. Partnership I v. Pearl, Miss., 952 F.2d 883, 885 (5th Cir.1992).
[14] See id.
[1] See, e.g., In re Lindsay, 59 F.3d 942 (9th Cir.1995); Federal Deposit Ins. Corp. v. Tripati, 769 F.2d 507 (8th Cir.1985).
[2] See, e.g., Intergraph Corp. v. Intel Corp., 253 F.3d 695 (Fed.Cir.2001); Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944 (7th Cir. 1980).
[3] See Cerny v. Todco Barricade Co., 273 Neb. 800, 809, 733 N.W.2d 877, 886 (2007).
[4] See id.
[5] Supplemental brief for appellant at 2.
[6] See, Neb.Rev.Stat. § 25-1329 (Cum. Supp. 2006); 10 James Wm. Moore et al., Moore's Federal Practice § 54.26[1] (3d ed. 2008).